■ DAKOTA JADE T., an Infant, by her Mother and Natural Guardian, TIESHA J., et al., Respondents, v NEW YORK CITY HOUSING AUTHORITY, Appellant. [49 NYS3d 446]—

Order, Supreme Court, Bronx County (Barry Salman, J.), entered January 28, 2016, which denied defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

The court properly denied defendant New York City Housing Authority's (NYCHA) motion for summary judgment. The subject child, Dakota Jade T., born in 2005, was diagnosed as having elevated blood lead levels in 2010, and some of the surfaces that the Department of Health (DOH) tested in each of the subject apartments had positive results for lead. NYCHA, the owner and operator of the subject premises, was responsible for maintaining both apartments. The conflicting test results submitted by NYCHA and testimony by its expert that DOH's positive readings were affected by rebar in the concrete ceilings, did not satisfy NYCHA's burden on summary judgment to disprove the existence of lead. Additionally, NYCHA did not demonstrate that it did not know about lead paint in the building. At the very least there are genuine issues of fact regarding whether NYCHA had knowledge of lead paint danger in the apartments.

Dakota has resided with her mother, plaintiff Tiesha J. (plaintiff), in apartment 20S since birth. During a routine blood test on January 20, 2010, Dakota was diagnosed with lead poisoning; her blood lead level was 45ug/dl. Prior to her diagnosis, Dakota's aunt used to babysit for Dakota four days a week in her apartment from which she runs a City-approved day care business. The aunt's apartment (14P), is in the same building that Dakota lives in. Plaintiff claims that she made numerous complaints to NYCHA about peeling paint in her apartment. When deposed, she testified that she made these complaints over a period of years to NYCHA's employees. The complaints were made orally, in person, and by telephone, and once she filled out a repair request form at NYCHA's management office. She also filed a complaint with 311. No one, however, came to inspect her apartment until after Dakota's diagnosis. Plaintiff says she saw Dakota (then a toddler) playing with peeling paint chips on the floor, sometimes putting them into her mouth. The aunt, who was also deposed, testified that she also complained about peeling paint in her apartment, but no one came to inspect.

Danny Lugo, a former NYCHA employee and superintendent at the subject building from 2009 until April 2013, was deposed. He testified that several tenants came in with reports showing

that a child they lived with had elevated blood-level lead or lead poisoning. Upon such a report being made, NYCHA would inspect the apartment, but did not notify DOH. Lugo testified several parents came in with positive results while he was employed and that several apartments were inspected. Lugo could not remember exactly how many, but this happened approximately five times. He could not recall instances when an apartment underwent lead abatement, but he also testified that he did not know the results of any of the inspections that were made. Lugo testified that apartments within the subject building were painted every $3\frac{1}{2}$ years. According to Lugo, the painting was not done "in-house" by NYCHA, but performed by a contractor. The work was later inspected by a paint inspector, but he did not elaborate what this entailed. He also testified he received no special training regarding lead paint.

NYCHA denies it had actual or constructive notice of peeling lead-based paint in either apartment. It argues that it could not have had any knowledge of lead paint because there was no lead paint in the apartments and that it otherwise did not know about any lead paint.

Although NYCHA relies on its own testing that was negative for lead paint, DOH's lead testing came back positive. NYCHA's arguments that these were false positives due to the manner in which, and location from where, the samples were taken is insufficient to disregard them as a matter of law. It is undisputed that lead-paint violations were issued against NYCHA. Although NYCHA filed a notice of intent to challenge the violations (contestation), the contestation was denied by DOH. DOH denied the contestation on the basis that the supporting documentation NYCHA provided was "not sufficient" to indicate that proper procedure had not been followed by the tester or that the test results were inaccurate. NYCHA separately argues it would be unreasonable to conclude that lead-based paint was used to paint either apartment because the use of lead-based paint in residential buildings was banned in New York City in 1960 and construction of the building was completed in 1974. The ban on lead paint alone is not sufficient to conclusively prove that no lead paint was used.*

Nor did NYCHA prove as a matter of law, that it had no actual or constructive notice of the existence of lead paint in the building. Pursuant to the City's Childhood Lead Poisoning Prevention Act (Local Law No. 1 [2004] of City of NY art 14),

---

* Lead paint was still available for purchase and it was not until 1978 when the federal government banned the use, sale and distribution of lead paint as a hazardous product (16 CFR 1303. 1 *et seq.*).

lead-based paint is presumed to exist in a multiple dwelling unit if the building was built before 1960. Where, as here, the building is built between 1960 and 1978, the presumption will apply only if the owner knows that there is lead-based paint, and a child under the age of six lives in the apartment. Although in a pre-1960 building, paint is presumed to contain lead, the opposite is not true; there is no presumption that paint in a building constructed after 1960 is not lead-based. Given plaintiff's claim, that NYCHA maintains the premises and assumed the duty to have the apartments painted, the absence of any evidence concerning the history of painting in the subject apartments is insufficient for the court to rule out, as a matter of law, notice. Concur—Richter, J.P., Manzanet-Daniels, Gische, Webber and Kahn, JJ.